IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## SHIRLEY P. SECREST v. TERA C. HAYNES, ET AL.

### Appeal from the Circuit Court for Marshall County
No. 14587     F. Lee Russell, Judge

_____

### No. M2002-01895-COA-R3-CV - Filed September 8, 2003

_____

The appeal involves a claim for property damages by Shirley Secrest ("Secrest" or "Plaintiff") against Kenneth Smith and Tera Haynes, who were driving separate vehicles involved in a multi-vehicle accident with a vehicle owned by Plaintiff. After a trial, the Trial Court concluded that while the driver of Plaintiff's vehicle was not at fault and that either one or both of the Defendants were at fault, the complaint nevertheless should be dismissed because: (1) Plaintiff failed to prove by a preponderance of the evidence that Kenneth Smith was negligent; and (2) Plaintiff failed to prove by a preponderance of the evidence that Tera Haynes was negligent. Plaintiff appeals, claiming the Trial Court was required to allocate fault to Smith and/or Haynes once it concluded that Plaintiff was not at fault and either one or both of the Defendants were at fault. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

C. Tim Tisher, Columbia, Tennessee, for the Appellant Shirley P. Secrest.

Edwin Z. Kelly, Jr., Jasper, Tennessee, for the Appellees Tera C. Haynes and Terry Haynes.

David W. Carter, Columbia, Tennessee, for the Appellee Kenneth W. Smith.

# OPINION

## Background

This lawsuit involves a multi-vehicle automobile accident. Secrest filed a lawsuit in the General Sessions Court for Marshall County against Tera Haynes ("Ms. Haynes"), whom Secrest claimed was negligent and responsible for the accident, as well as Terry Haynes, the owner of the automobile driven by Ms. Haynes. A couple of months later, Secrest filed a separate lawsuit in the same Court against Kenneth Smith ("Smith"), claiming he also was negligent and caused the accident. Smith also filed suit against Tera and Terry Haynes seeking compensation for damage to his vehicle resulting from the accident.

After the various lawsuits were consolidated, a trial took place in the General Sessions Court. A copy of the transcript of this trial has not been included in the record on appeal. We do know, however, that: (1) the General Sessions Court Judge found in favor of Ms. Haynes, Terry Haynes, and Smith in the lawsuits filed against them by Secrest; and (2) the lawsuit filed by Smith against Ms. Haynes and Terry Haynes was dismissed for "failure of proof."

The General Sessions Court lawsuits were appealed to the Marshall County Circuit Court. Terry Haynes then filed a separate lawsuit for property damage against Smith, Secrest, and her son, Tony Secrest ("Mr. Secrest") who was driving Secrest's car at the time of the accident. All of these lawsuits were consolidated and a bench trial was conducted on January 25, 2002.

Smith testified that on the day of the accident, he was driving a 1992 Ford Ranger. He described the road conditions as "the slickest road I had ever been on." The accident occurred between 6:00 and 6:30 p.m., and it was dark outside. There was a vehicle traveling behind him just before the accident. After the accident he learned this vehicle behind him was a Honda Accord driven by Mr. Secrest and owned by Secrest. Smith testified he was going between 20 to 25 miles per hour and was traveling down a hill when the accident occurred. According to Smith, he first noticed the Chevy Blazer being driven by Ms. Haynes "[w]hen I saw her headlights pointed at my door." Smith stated it looked like the Haynes vehicle "just jumped out from under her. It turned sideways [at] about a 45 degree angle and started across our lane of traffic." According to Smith, the accident then occurred in Smith's lane of travel. The left front of the driver's side of the Haynes vehicle impacted with Smith's driver's door down to the back bumper. Smith testified the Secrest vehicle behind him was following at a safe distance. After Smith's and Haynes' vehicles hit, Smith stopped his vehicle at the bottom of the hill. He looked back up the hill and could see the other wrecked vehicles. On cross-examination, Smith admitted he could have been traveling as fast as 30 miles per hour. Smith did not recall seeing a vehicle in front of the Haynes vehicle although he could not definitively state there was not one.

The next witness was Mr. Secrest. Mr. Secrest testified the accident occurred while he was returning home from work and while he was traveling behind the Smith vehicle. According to Mr. Secrest:

As I was going on [Highway] 99, after we turned on, I seen Ms. Haynes lose control of her vehicle and hit Mr. Smith in the side; and as I was coming down, I was trying to ease to the shoulder of the road, and her vehicle kept coming, and I struck Ms. Haynes and knocker her in the ditch. I went sideways and stayed in the road....

Mr. Secrest stated he could not recall seeing any vehicles in front of the Haynes vehicle. Although the road was covered with snow and he could not see the road markings, Mr. Secrest claimed Smith did not leave their lane of travel. Mr. Secrest testified he could tell where the center line was supposed to be based on the tracks in the snow left by other vehicles.

Ms. Haynes testified she was in Tennessee to visit a friend and was driving a Chevy Blazer owner by her father, Terry Haynes. When it began to snow, Ms. Haynes reduced her speed and was traveling approximately 20 miles per hour when the accident occurred. Ms. Haynes stated there was at least one vehicle traveling in front of her. Ms. Haynes recalled beginning to travel up a hill and then seeing Smith's truck coming toward her and then the vehicles hit. According to Ms. Haynes, the Smith vehicle began to slide and was in her lane of travel.

The accident was witnessed by Joel Bray, a resident of Oklahoma whose deposition testimony was admitted at trial. Bray testified the weather conditions on the day of the accident were "nasty." The roads were iced over and it had been snowing and sleeting. According to Bray, a vehicle came over the hill "going pretty fast" and Bray swerved to avoid a collision. Bray then described the accident as follows:

I knew that there was a vehicle immediately behind me. The vehicle had been behind me ever since I got off at the interstate.... I knew they were just right there behind me. I knew that they couldn't avoid the collision, because I barely did. I looked in my rearview mirror and seen the impact, and then looked over my right shoulder, turned around, looked over my right shoulder and seen them hit.

My wife hollered at me. I was about to run off in the ditch. I started to stop right there, but there was another vehicle come off the hill. He lost control of his [car]. There was cars all wrecked in the road. He lost control of his vehicle. He nearly hit me, nearly hit all the other vehicles, and he slid off in the ditch....I was shocked no one was hurt, the way the guy hit the woman.

Bray described the vehicle which was behind him as an S10 Blazer, which was the Haynes vehicle. According to Bray, there was another vehicle, a Honda, traveling westbound which was behind the Smith vehicle. The Honda ended up sitting in the middle of the road. By this time, the Smith vehicle was out of sight, although Smith had apparently walked back to the scene of the accident. Bray testified the S10 Blazer that was behind him had been traveling at about 15 to 20

miles per hour and maintained a "good distance" between them. From what Bray observed, the S10 Blazer was being operated within its lane of traffic. According to Bray, the accident occurred in the lane in which Bray and the Haynes vehicle were traveling. Bray testified that the vehicle which initially impacted the S10 Blazer was a Ford Ranger and, by the time it impacted with the Blazer, it was sideways.

The Trial Court issued a Memorandum Opinion and concluded that: (1) neither Smith nor Secrest had met their burden of proving that Ms. Haynes was at fault; (2) neither Mr. Haynes nor Secrest had met their burden of proving that Smith was a fault. The Trial Court went on to conclude that the accident was not the result of an act of God, although the weather conditions certainly impacted on how a reasonable person should have been driving. After stating Mr. Secrest was entirely without fault, the Trial Court stated:

> [I conclude] that Ms. Secrest's damages were caused, in fact and legally, by *either* the negligence of Ms. Haynes, the negligence of Mr. Smith, *or* some combination of the two. However, again, I [find] that Ms. Secrest did not carry her burden of proof which of the two other drivers was at fault and to what degree.
>
> The legal issue that we were all pondering was whether under these circumstances, the finder of fact can infer a 50-50 apportionment of fault. Stated differently, if an injured party proves that one or both of two tortfeasors were at fault but fails to prove which one was and to what degree, does the finder of fact presume or infer a 50-50 apportionment of fault? Put a third way, if an injured party proves that one or both of two alleged tortfeasors was at fault in the accident, but does not prove which one was and to what degree, does the burden of proof shift to the alleged tortfeasors to prove that the other tortfeasor was at fault, and if that is not done, is there a presumption in favor of a particular apportionment of fault?
>
> My conclusion is that the burden of proof was on Ms. Secrest to prove, in order to recover anything from Mr. Smith, that Mr. Smith's driving was the cause in fact and the legal cause of damages to her car. She did not do so and therefore cannot recover from Mr. Smith. Likewise, the burden of proof was on Ms. Secrest to prove, in order to recover anything from Mr. or Ms. Haynes, that Ms. Haynes' driving was the cause in fact and legal cause of some damages to Ms. Secrest's car. Ms. Secrest did not do so and therefore cannot recover from Mr. or Ms. Haynes. (emphasis in original).

The Trial Court then entered a final order incorporating these conclusions contained in its Memorandum Opinion and dismissed all of the various lawsuits.

Secrest appeals claiming the Trial Court erred by not allocating fault between Defendants Smith and Haynes when: (1) the accident was not the result of an act of God; (2) Secrest's son was entirely without fault in the accident; and (3) Secrest's damages were caused in fact and legally by the negligence of either Smith and/or Haynes. Secrest's second issue is whether the Trial Court erred in concluding Secrest did not carry her burden of proving which of the other two drivers was at fault and to what degree.

## Discussion

The factual findings of a trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

In a negligence claim, a plaintiff is required to prove the following elements by a preponderance of the evidence: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

In *Bara v. Clarksville Memorial Health Systems Inc.,* 104 S.W.3d 1 (Tenn. Ct. App. 2002), this Court discussed the distinction between cause in fact and proximate cause as follows:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw*, 854 S.W.2d 865 at 869; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n.7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okl. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred

but for that conduct.'" *Id.* at 470 (quoting Prosser and Keeton, *The Law of Torts*, 266 (5th ed. 1984)).

*Bara*, 104 S.W.3d at 9 (quoting *Kilpatrick v. Bryant*, 868 S.W.2d at 598 (Tenn. 1993)).

Defendants rely, in part, on the unreported opinion in *Anthony v. Holland*, No. W2001-00745-COA-R3-CV, 2001 Tenn. App. LEXIS 900 (Tenn. Ct. App. Nov. 29, 2001), *no appl. perm. appeal filed*. In *Anthony*, the defendant admitted fault in a "very low impact" automobile accident. After a non-jury trial, the trial court concluded the plaintiff failed to prove by a preponderance of the evidence that the automobile accident proximately caused his claimed injuries. *Anthony*, 2001 Tenn. App. LEXIS 900, at *4. In affirming the judgment of the trial court, this Court discussed the causation element in a negligence case, noting that a plaintiff must prove causation by a preponderance of the evidence. If a plaintiff fails to do so, then his or her action must fail. "If testimony in a lawsuit leaves a determinative fact unresolved, then the evidence does not preponderate." *Id.*, at *7. When the probabilities of causation are at best "evenly balanced," the verdict must be for the defendant. *Id.*, at *8.

Defendants also rely on *Howard v. Norwood*, No. M1999-00838-COA-R3-CV, 2000 Tenn. App. LEXIS 335 (Tenn. Ct. App. May 25, 2000), wherein the plaintiff Lawrence Howard was involved in an automobile accident with two other vehicles. After a trial, the jury assigned zero percent fault to each of the individuals listed on the verdict form, including the plaintiff. On appeal, one of the many issues raised by the plaintiff was his contention that since he was injured in an accident and was not at fault, the fault and responsibility must necessarily be placed on one or more of the other people involved in the accident. We rejected this argument, noting that it was possible for an injury to occur from an accident for which no one is culpable, and the mere occurrence of an accident does not require a jury to find fault. *Id.*, at ** 14, 15. *Howard* is not squarely on point to the present case because here the Trial Court concluded somebody other than the driver of Plaintiff's car was at fault, even though Plaintiff did not prove who it was. Nevertheless, *Howard* correctly points out that simply because there was an accident causing damage to a non-negligent plaintiff, that plaintiff is not automatically entitled to recover damages.

The question before us is whether the Trial Court was *required* to assign fault to Smith and/or Ms. Haynes after it concluded that either one or both of them was at fault but: (1) Plaintiff did not establish by a preponderance of the evidence that Smith was at fault; and (2) Plaintiff did not establish by a preponderance of the evidence that Ms. Haynes was at fault. For the following reasons, we conclude the Trial Court was not required to find liability and then assign fault under these circumstances.

When confronted with flatly contradictory testimony, a trial court has several weapons it its arsenal in which to "break the tie" and determine whose testimony is more accurate. For example, the testimony of one or more of the witnesses may be riddled with internal inconsistencies or simply be unbelievable for one reason or another. There also may be documentary evidence, physical evidence, expert testimony or the like which is relevant to determining the causation issue.

-6-

Put simply, the fact finder must evaluate all of the proof and, if possible, make credibility determinations in order to determine which version of events is more accurate.

In the present case, Smith and Mr. Secrest testified that Ms. Haynes crossed into their lane of travel causing the accident. Ms. Haynes and Bray, however, testified that it was Smith who crossed into their lane of travel causing the accident. It does not appear from the record that the testimony of any of these witnesses was facially untrustworthy or otherwise tainted because of internal inconsistencies or the like. In addition, there was no documentary evidence or expert proof introduced to assist the Trial Court in resolving the critical issue of causation.[1] Based on the Trial Court's ultimate conclusion, it implicitly found Smith and Mr. Secrest were equally as credible as Ms. Haynes and Bray. Although both versions of how the accident happened certainly could not be accurate, the Trial Court could not determine which version to credit, and after thoroughly reviewing the record, we find no error in the Trial Court's inability to pick one version of events over the other. "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). A trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). This rule concerning our deference to a trial judge's assessment of witness credibility is just as applicable to a situation where the trial judge decides that witnesses are equally credible as it is when the trial judge decides one witness is more credible than the other. We find no such clear and convincing evidence to the contrary in the present case.

We conclude the preponderance of the evidence does not weigh against the Trial Court's findings and conclusion that Plaintiff failed to prove Smith was "the cause in fact and the legal cause of . . ." the damages to Plaintiff's car. Likewise, the preponderance of the evidence does not weigh against the Trial Court's findings and separate conclusion that Plaintiff failed to prove Ms. Haynes was "the cause in fact and [the] legal cause . . ." of the damages to Plaintiff's car. As we are unable to alter these factual conclusions, it would be inappropriate for this Court literally to force the Trial Court to go against its own factual conclusions and require it to credit either the testimony of Smith and Mr. Secrest or that of Ms. Haynes and Bray. From the record before us, this Court certainly is in no better position than was the Trial Court to make an independent credibility determination and chose which pair of witnesses to believe. *Cf. Barrick v. Grimes*, 720 N.E.2d 280, 283 (Ill. App. 1999)(Affirming a jury verdict in an automobile accident case in which the jury found for the defendants on plaintiff's complaint, and found for the plaintiff on defendants' counterclaim. Holding the verdicts were not inconsistent, the Court stated that the "jury may well have felt that the evidence of which vehicle had the green light was so conflicting, inconclusive, and unsatisfactory that it simply could not determine from the evidence presented which party was negligent.").

---

[1] We in no way intend to imply that these other types of proof were available or otherwise should have been introduced at trial.

-7-

Given the Trial Court's conclusion that Plaintiff failed to prove by a preponderance of the evidence who was at fault, we believe requiring the Trial Court to assess fault under these circumstances also would run afoul of the Tennessee Supreme Court's opinion in *McIntyre v. Ballentine,* 833 S.W.2d 52 (Tenn. 1992). In *McIntyre*, the Court adopted a modified comparative fault system which "more closely link[ed] liability and fault," thereby doing away with the "obsolete" common law doctrine of contributory negligence. *McIntyre*, 833 S.W.2d at 56-58. This new system also did away with the doctrine of joint and several liability, which may "fortuitously impose a degree of liability that is out of all proportion to fault." *Id.* at 58. Under this new system, the Court observed that "because a particular defendant will henceforth be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, situations where a defendant has paid more than his 'share' of a judgment will no longer arise …." *Id.* at 58. The Court's adoption of a comparative fault system in *McIntyre* did not alter a plaintiff's burden of proof with regard to causation in a negligence claim. If we required the Trial Court to assign fault to one or both Defendants herein, then that Defendant(s) would be assessed a percentage of fault and held liable for monetary damages, even though Plaintiff never proved by a preponderance of the evidence that either Defendant was causally at fault.

We are very much aware of the seemingly inherent unfairness of any decision we render in this case. If we accept Plaintiff's position, then one or both Defendants will be held liable even though Plaintiff failed to prove either one was the cause of the accident. This does not sound right. If we accept Defendants' argument, then Plaintiff recovers no damages even though we know, accepting the Trial Court's findings as we have, at least one of the Defendants (but not which one) was at fault. This does not sound right either. Nevertheless, we believe we have reached the correct result since it was Plaintiff who at all times was required to establish each element in her negligence claim by a preponderance of the evidence, something she did not do. Our conclusion also is in accord with the principles of fairness discussed in *McIntyre, supra.* Fortunately, it is a rare case indeed when a trial court simply will be unable to "break the tie," as in the present case.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as necessary, if any, consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed against the Appellant, Shirley Secrest, and her surety.

_____
D. MICHAEL SWINEY, JUDGE